UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX RIVERA GIORGES and SOKHA KHAN,<br>   Petitioners-Plaintiffs,<br><br>v.<br>POLLY KAISER, in her official capacity, Acting San Francisco Field Office Director, U.S. Immigration and Customs Enforcement;<br><br>TODD M. LYONS, in his official capacity, Acting Director, U.S. Immigration and Customs Enforcement;<br><br>KRISTI NOEM, in her official Capacity, Secretary of the U.S. Department of Homeland Security; and<br><br>PAMELA BONDI, in her official capacity, Attorney General of the United States,<br><br>   Respondents-Defendants. | Case No. 25-cv-07683<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 2 |

   Pending before the Court is Petitioners-Plaintiffs Alex Riviera Giorges and Sokha Khan's Ex Parte Motion for Temporary Restraining Order. ECF 2. Petitioners-Plaintiffs request that the Court issue an order enjoining Respondents from detaining them unless and until Petitioners-Plaintiffs are afforded notice and a hearing before a neutral decisionmaker. For the reasons stated below, the Court GRANTS Petitioners-Plaintiffs *Ex Parte Motion* for Temporary Restraining Order.

I.  BACKGROUND

According to the information available to the Court, Petitioners-Plaintiffs are both noncitizens who were released from Immigration and Customs Enforcement ("ICE") custody pursuant to a court order in *Zepeda Rivas v. Jennings*, No. 3:20-cv-2731 (N.D. Cal.).  ECF 1 ¶¶ 1. In *Zepeda Rivas*, Judge Chhabria granted provisional class certification and a temporary restraining order that created a process for class members to submit class members to submit bail applications.  *Id*. 36.  *Zepeda Rivas* ultimately resolved with a Settlement Agreement that permitted ICE to re-detain class members only if a class member posed a threat to public safety or national security, and/or a risk of flight.  *Id* ¶ 23.

Petitioner-Plaintiff Rivera came to the United States from El Salvador as a Lawful Permanent Resident when he was eleven years old.  *Id*. ¶ 13; ECF 2-2 ¶ 2.  In July 1992, Petitioner-Plaintiff Rivera was convicted of second-degree murder and conspiracy.  ECF 1 ¶ 30. Plaintiff-Petitioner Rivera was diagnosed with follicular lymphoma in 2014 and underwent 6 months of chemotherapy.  *Id.* ¶ 31.  Upon release from criminal custody in June 2019, ICE initiated removal proceedings.  *Id.* ¶¶ 30, 46.  ICE detained Petitioner-Plaintiff Rivera at Yuba County Jail.  *Id*. ¶ 34. Petitioner-Plaintiff Rivera submitted his bail application pursuant to the *Zepeda Rivas* temporary restraining order on May 11, 2020 and, on May 23, 2020, was released from ICE custody on May 23, 2020 with an ankle monitor.  *Id.* ¶¶ 24, 37.  Judge Chhabria granted Petitioner-Plaintiff Rivera's application and only imposed the condition that class counsel certify to ICE that transitional housing was available for Petitioner-Plaintiff Rivera.  *Id*. 38.  Petitioner-Plaintiff Rivera has since been actively litigating his immigration case and has a motion pending before the Executive Office of Immigration Review ("EOIR") to reopen his proceedings to pursue protection from removal under the Convention Against Torture.  *Id*. ¶ 13.  Since being released from custody over five years ago, Petitioner-Plaintiff Rivera has remained employed at a non-profit organization that provides housing shelter and he volunteers at local food banks.  *Id*. ¶ 4. Four years after Petitioner-Plaintiff Rivera's release from ICE custody, Petitioner-Plaintiff Rivera was served with an Order of Supervision and enrollment in the Intensive Supervision Appearance Program.  *Id*. ¶ 24.  Petitioner-Plaintiff Rivera is required to check in with ICE on September 15,

2

2025. *Id.*

Petitioner-Plaintiff Khan came to the United States when he was two years old, after his parents fled Cambodia due to violence and instability. *Id.* ¶ 14. He was admitted to the United States on June 15, 1983 as a refugee and adjusted to Lawful Permanent Resident status on November 29, 1989. *Id.* ¶ 52. He was convicted of Section 211, CPC 212.5 (A), and CPC 188.22 (B)(1) felonies on January 4, 2006 and served time in prison. *Id.* ¶¶ 52–54. Upon release, he was immediately transferred to ICE custody. *Id.* ¶ 54. Pursuant to the *Zepeda Rivas* bail process, Petitioner-Plaintiff Khan's bail application was approved on July 21, 2010 and he was released. *Id.* ¶ 25. Since his release from ICE custody, Petitioner-Plaintiff Khan has lived with his aging mother, helping her manage her high cholesterol, diabetes, and high blood pressure. *Id.* at ¶ 5. Petitioner-Plaintiff Khan takes his mother to medical appointments, helps with her medication, and is her primary caretaker. *Id.* Petitioner-Plaintiff Khan has a scheduled check-in at the San Francisco Field office on September 10, 2025 at 9 a.m. ECF 2 at iii, 9.

Petitioners-Plaintiffs fear that ICE will detain them and keep them indefinitely. ECF 1 ¶ 7.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice pursuant to Federal Rule of Civil Procedure 65(b) are met. Petitioners-Plaintiffs' attorney has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition and has stated that counsel attempted to contact the Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on September 9, 2025. ECF 2-1.

Having found that the requirements of Federal Rule of Civil Procedure 65(b) are met, the Court also finds that Plaintiffs-Petitioners (A) have demonstrated that they will likely succeed on the merits of his claim; (B) are likely to suffer irreparable harm in the absence of preliminary relief; and (C) the balance of equities and the public's interest weigh in favor of granting relief.

#### A. Petitioners-Plaintiffs Will Likely Succeed on the Merits of Their Claim

Petitioners-Plaintiffs will likely succeed on the merits of their claim. The protections of the Constitution apply to all persons within the jurisdiction of the United States, including citizens and non-citizens alike, and including those persons who are present in the United States without authorization. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) (noting that "[a]liens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments"). Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

Here, Petitioners-Plaintiffs have a protected liberty-interest in remaining out of custody,

which would allow them to continue to serve their community and provide for their families. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that [the Due Process Clause of the Fifth Amendment to the United States Constitution] protects." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Moreover, "the Supreme Court has held that 'habeas corpus relief is not limited to immediate release from illegal custody, but . . . is available as well to attack future confinement and obtain future releases.'" *Giovanny Hernan Ortega v. Kaiser*, No. 25-cv-5259, 2025 WL 2243616, at *3 (Aug. 6, 2025) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)). Petitioners-Plaintiffs have been released pursuant to bond orders. Based on the information before the Court, there is no indication that either Petitioner-Plaintiff violated either of their bond conditions or immigration requirements. Petitioners-Plaintiffs have no new criminal history since their release from ICE custody and have complied with the conditions of their release. ECF 2-1 ¶ 10. The Court notes that Petitioners-Plaintiffs' citation to *Duong v. Kaiser*, No. 25-cv-7598, 2025 WL 2578275 (N.D. Cal. Sept. 6, 2025) involved an individual who was already detained and suffered from a collapsed lung and tested positive for COVID. *See Duong v. Kaiser*, No. 25-cv-7598, ECF 1 ¶¶ 29, 34, 38.

Accordingly, the Court finds that the three factors relevant under the *Mathews v. Eldrige* test, "the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," weigh in favor of Petitioners-Plaintiffs being given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody.

### B. Petitioners-Plaintiffs Will Likely Suffer Irreparable Harm in the Absence of Temporary Relief

Petitioners-Plaintiffs likely face irreparable injury and harm to liberty absent relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As discussed above, Petitioners-Plaintiffs have a

5

constitutional liberty interest in their conditional release.  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (cleaned up).

### C. The Balance of Equities and the Public Interest Weigh in Favor of Granting a Stay

The final two *Winter* factors, the balance of the equities and public interest, merge and weigh heavily in favor of granting temporary relief.  "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up) (internal quotations omitted).  Petitioners-Plaintiffs face significant harm absent relief, while the harm to Respondents is minimal.  *See Domingo*, 2025 WL 1940179, at *4 ("[T]he comparative harm potentially imposed on Respondents-Defendants is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted.").  Respondents, at most, face a short delay in detaining Petitioners-Plaintiffs and are not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioners-Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order to preserve the status quo pending further briefing and a hearing on this matter.

Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioners-Plaintiffs Alex Rivera Giorges and Sokha Khan without notice and a pre-deprivation hearing before a neutral decisionmaker that Petitioners-Plaintiffs' detention is legally justified, and from removing them from the United States.  This Order shall remain in effect until September 23, 2025 at 5 p.m.

The Petition, *Ex Parte* Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents such that they receive actual notice as soon as practicable, and Petitioners-Plaintiffs shall file proof of such service by no later than September 12, 2025 at 5 p.m.

1    Respondents are ORDERED TO SHOW CAUSE in-person at a hearing in the courtroom
2 of the assigned Judge, or as otherwise ordered by that Judge, on September 22, 2025 at 1:00 p.m.
3 why a preliminary injunction should not issue.  Respondents shall file a response to Petitioners-
4 Plaintiffs' motion by no later than September 15, 2025.  Any reply should be filed by September
5 18, 2025.  Petitioners-Plaintiffs shall not be deported, removed, or otherwise transferred outside
6 the United States until further Order of this Court.

7    IT IS SO ORDERED.

8 Dated: September 9, 2025 at 9:35 p.m.

TRINA L. THOMPSON
United States District Judge